THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| REALLY RIGHT STUFF, LLC, <br><br> Plaintiff, <br><br> v. <br><br> FIELD OPTICS RESEARCH, INC., <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS FOR CLAIM CONSTRUCTION** <br><br> Case No. 2:20-cv-00345-DBB <br><br> District Judge David Barlow |

Plaintiff Really Right Stuff, LLC ("Really Right Stuff") alleges infringement by Defendant Field Optics Research, Inc. ("Field Optics Research") of three of the patents that Really Right Stuff owns through assignment. The parties have moved the court to construe certain disputed terms and language in the relevant patents.[1] The court held a *Markman* hearing on June 26, 2023, and now provides the following claim construction.

## BACKGROUND

Really Right Stuff asserts that Field Optics Research has violated three of its patents: 1) U.S. Patent No. 6,773,172 ("the '172 patent") titled "Quick-Release Clamp for Photographic Equipment"; 2) U.S. Patent No. 10,612,718 ("the '718 patent") titled "Dual Clamping Device"; and 3) U.S. Patent No. 10,585,337 ("the '337 patent") titled "Panoramic Camera Mount."[2]

Analysis of patent infringement is a two-step process.[3] First, the court construes the meaning of a patent's contested claim terms as a matter of law.[4] Second, "the properly construed

---

[1] ECF Nos. 112, 114.
[2] ECF No. 22.
[3] *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1323 (Fed. Cir. 2002).
[4] *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 387 (1996); *Teleflex*, 299 F.3d at 1323.

claims are compared to the allegedly infringing device to determine, as a matter of fact, whether all of the limitations of at least one claim are present, either literally or by a substantial equivalent, in the accused device."[5]

The parties filed opening claim construction briefing on April 22, 2022.[6] On July 20, 2022, Really Right Stuff moved to amend its infringement contentions to include another device that it had learned about during discovery.[7] The court vacated the previously scheduled *Markman* hearing, granted all motions to amend, and set a new briefing schedule.[8]

In their renewed briefs for claim construction, the parties dispute one term in the '337 patent and six terms in the '172 patent.[9] In addition, Field Optics Research argues that certain language in the '337 patent is functional language not reciting any structure and should therefore be evaluated under means-plus-function analysis.[10]

## STANDARD

"In construing claims, district courts give claims their ordinary and customary meaning, which is 'the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention.'"[11] "'[B]ecause patentees frequently use terms idiosyncratically, the court looks to' sources including 'the words of the claims themselves, the remainder of the

---

[5] *Teleflex*, 299 F.3d at 1323.
[6] ECF Nos. 56–58.
[7] ECF No. 78. Really Right Stuff now alleges infringement by Field Optics Research devices with the following product codes: FBT-ASPL, FBT-ASFPL, FBH-44DT, FBH-55DT, and FPH-ULP. ECF No. 109.
[8] ECF Nos. 105–06.
[9] ECF Nos. 112, 114. The parties do not dispute any terms in the '718 patent.
[10] ECF No. 114.
[11] *Cont'l Cirs. LLC v. Intel Corp.*, 915 F.3d 788, 796 (Fed. Cir. 2019) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc)).

specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'"[12]

"From this list of sources, 'the claims themselves provide substantial guidance as to the meaning of particular claim terms.'"[13] "However, the claims 'do not stand alone.'"[14] "They are part of 'a fully integrated written instrument, consisting principally of a specification that concludes with the claims,' and must therefore 'be read in view of the specification.'"[15] "Accordingly, the specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"[16]

"In addition to consulting the specification, . . . a court 'should also consider the patent's prosecution history, if it is in evidence.'"[17] "Like the specification, the prosecution history provides evidence of how the [United States Patent and Trademark Office ("PTO") ] and the inventor understood the patent."[18] The Federal Circuit has cautioned, however, that "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes."[19]

---

[12] *Id.* (quoting *Phillips*, 415 F.3d at 1314).
[13] *Id.*; *see Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998) ("[T]he claims define the scope of the right to exclude; the claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim.").
[14] *Cont'l Cirs.*, 915 F.3d at 796.
[15] *Id.*
[16] *Id.*; *see Braintree Lab'ys, Inc. v. Novel Lab'ys, Inc.*, 749 F.3d 1349, 1354–55 (Fed. Cir. 2014) ("In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to 'particularly point[ ] out and distinctly claim[ ] the subject matter which the patentee regards as his invention.'" (quoting *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001))).
[17] *Cont'l Cirs.*, 915 F.3d at 796.
[18] *Id.*
[19] *Id.*

There are two exceptions to the rule that claim terms are given the plain and ordinary meaning to one of skill in the art: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution."[20] "The standards for finding lexicography and disavowal are exacting."[21]

"To act as its own lexicographer, a patentee must clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning" and must "clearly express an intent to redefine the term."[22] "Disavowal requires that 'the specification [or prosecution history] make[ ] clear that the invention does not include a particular feature,'[23] or is clearly limited to a particular form of the invention.[24] For example, the Federal Circuit has held that "disclaimer applies when the patentee makes statements such as 'the present invention requires …' or 'the present invention is …' or 'all embodiments of the present invention are….'"[25]

If, after this analysis, a district court disagrees with the parties' proposed constructions, the district court may construe the claims in a way that neither party advocates because it has an independent obligation to determine the meaning of the claims.[26]

---

[20] *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014) (quoting *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)).

[21] *Id.*

[22] *Id.* (quoting *Thorner*, 669 F.3d at 1365).

[23] *Id.* at 1372 (quoting *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001)).

[24] *Id.* at 1372 (citing *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1330 (Fed. Cir. 2009)).

[25] *Id.*

[26] *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1274 (Fed. Cir. 2012) (citing *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1555 (Fed. Cir. 1995)).

## DISCUSSION

### A.  Person of Ordinary Skill in the Art

The first step in the claim construction process is to define a "person of ordinary skill in the art." "The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation."[27]

The parties do not dispute the requisite level of skill in the art applicable to the relevant patents and the court finds that the definition proposed by Field Optics Research is reasonable and supported by the prior art:[28] a person with ordinary skill in the art would have, through education or practical experience, the equivalent of a bachelor's degree in mechanical engineering or a related field and would understand the basics of designing and manufacturing clamping devices.

### B.  Applicability of Means-Plus-Function Analysis

Really Right Stuff alleges infringement of claims 1 and 25 (among other claims) of the '337 patent.[29] Claim 1 reads as follows, with the contested language in bold and the contested term underlined:

> 1. An integrated panoramic device comprising:
> (a) a base having a lower surface suitable for supporting said base;
> (b) a first clamp member secured for rotation to said base and comprising a first clamp surface rotatable about a single axis substantially normal to said lower surface, said panoramic device being free from and incapable of said first clamp surface being rotatable about an axis other than said single axis substantially normal to said lower surface;

---

[27] *Phillips*, 415 F.3d at 1313 (Fed. Cir. 2005).
[28] Defendant's Response to Plaintiff's Motion for Claim Construction, ECF No. 119; *see also Okajima v. Bourdeau*, 261 F.3d 1350, 1355 (Fed. Cir. 2001) ("While it is always preferable for the factfinder below to specify the level of skill it has found to apply to the invention at issue, the absence of specific findings on the level of skill in the art does not give rise to reversible error 'where the prior art itself reflects an appropriate level and a need for testimony is not shown.'" (quoting *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed. Cir. 1985))).
[29] ECF No. 109.

> (c) a second clamp member including a second clamp surface slidably secured to said first clamp member … ;
>
> (d) a second member as a result of movement to selectively impede relative rotation of said first clamp member and said base, **said first clamp member and said second clamp member <u>not releasable</u> from said base by movement of said second member**, said first clamp member rotatable through 360 degrees with respect to said base; and
>
> (e) …[30]

Claim 25 is identical other than the distinct limitations claimed in paragraph (e), whose terms the parties do not dispute.[31]

Field Optics Research argues that the phrase "said first clamp member and said second clamp member not releasable from said base by movement of said member" is functional language not reciting any structure, and that therefore claims 1 and 25 should be analyzed as means-plus-function claims under 35 U.S.C. § 112 ¶ 6.

Prior to enactment of the America Invents Act ("AIA"),[32] 35 U.S.C. § 112 ¶ 6 expressly allowed "patentees to express a claim limitation by reciting a function to be performed rather than by reciting structure for performing that function."[33] Whether a claim includes a so-called means-plus-function element, thereby invoking paragraph 6 of § 112, is a question of law.[34] There is a presumption that claims which lack the phrase "means for" do not invoke § 112 ¶ 6.[35]

---

[30] ECF No. 113 at 115 ('337 patent 4:2-32).

[31] ECF No. 113 at 116 ('337 patent 5:28-57).

[32] Pub. L. No. 112-29, 125 Stat. 284 (2012). The application for the '337 patent claims priority to U.S. Patent Application No. 11/327,265. The '265 application was filed before the AIA effective date. Therefore, and because no claims of the '337 patent rely on matter disclosed after the effective date of the AIA, the court analyzes the '337 patent under the pre-AIA patent statute. *See* ECF No. 113 at 187 ("The present application is being examined under the pre-AIA first to invent provisions.").

[33] *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347 (Fed. Cir. 2015) (en banc); *see* 35 U.S. § 112 ¶ 6 (permitting patentees to express a claim limitation "as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof").

[34] *Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1379 (Fed. Cir. 2022) (citing *Williamson*, 792 F.3d 1339).

[35] *Id.*

But a challenger may rebut this presumption by showing that "the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'"[36]

Although claims without a specified structure are permissible, means-plus-function claims "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."[37] In other words, the patent applicant must indicate a clear association to the structures in the specification.[38] Failure to disclose the structure of a means-plus-function claim in the specification renders the claim indefinite.[39]

Because the claims at issue here lack the term "means," it is Field Optics Research's burden to rebut the presumption that § 112 ¶ 6 does not apply.[40] This burden must be met by a preponderance of the evidence.[41] Field Optics Research contends it has met this burden, arguing that the "not releasable" function is "the function of retaining the clamp body to the base"[42] and stating that "the claim is completely devoid of any structural language for performing" this function.[43] Field Optics Research therefore urges the court to look to the specification to determine the corresponding structure for the "not releasable" function. In the specification, Field Optics Research alleges that a retaining member and plug perform this function by securing

---

[36] *Williamson*, 792 F.3d at 1349 (quoting *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)).
[37] *Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1363 (Fed. Cir. 2012).
[38] *Id.*
[39] *See* 35 U.S.C. § 112.
[40] *Id.* (stating that the "challenger" must overcome the presumption).
[41] *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1372 (Fed. Cir. 2003) (citation omitted).
[42] ECF No. 119 at 9.
[43] ECF No 114 at 10.

the first clamp member to the base while allowing for rotation of the first clamp member about the base on a single axis.[44]

The court is not persuaded by Field Optics Research's analysis because it abstracts the words "not releasable" from the wider context of the claim limitation. When considering whether a claim limitation is a means-plus-function limitation, the court must look at the claim limitation as a whole.[45] Viewing the claims from that wider lens, the court finds that the claims recite sufficiently definite structure.

Claims 1(d) and 25(d) describe a second member (illustrated in the specification and embodiment as a knob and pin that may be turned)[46] and define that member both 1) by stating what the second member does: "as a result of movement" the member "selectively impede[s] relative rotation of said first clamp member and said base"; and 2) by describing what the second member does *not* do: "by movement of said second member," the first clamp member and second clamp member are "not releasable from said base[.]"[47] In other words, the operation of the second member is limited in that it cannot release the base from the first and second clamp members. This qualification of what the second member does not do is similar to an adjectival qualification and the Federal Circuit has held that "[a]n adjectival qualification … placed on an

---

[44] *See* parts 24 (retaining member) and 22 (plug) in Figure 1, ECF No. 22-3 at 4.
[45] *Apex*, 325 F.3d at 1372 (reversing a district court ruling that relied too heavily on "single words of the limitations … as opposed to the limitations as a whole").
[46] *See* part 30 in Figure 1, ECF No. 22-3 at 4. During the *Markman* hearing, the Defendant argued that the second member was illustrated in the preferred embodiment by the cinch ring. *See* part 26 in Figure 1, *id.* The court disagrees and instead adopts the Plaintiff's interpretation, as it is the knob and pin that impede rotation "as a result of movement" by tightening the cinch ring. This interpretation is consistent with the language in claims 1(c) and 25(c), which describe a "first member" that moves a second clamp surface "as a result of movement." *Id.* at 17, 19. As illustrated in the embodiment, this movement comes from a rotatable knob. *See* part 18 in Figure 1, *id.* Finally, this interpretation is consistent with the language in claims 1(e) and 25(e), which states that "said second member is engaged with said base and … includes a knob attached thereto." *Id.*
[47] *Id.* at 17–18.

otherwise sufficiently definite structure … does not make the sufficiency of that structure any less sufficient for purposes of § 112 ¶ 6. Instead, [the qualifying language] further narrows the scope of those structures covered by the claim and makes the term more definite."[48] Even assuming that the "not releasable" language is functional, the claim limitation recites the second member as sufficient structure.

Field Optics Research has not demonstrated that the claims do not include "sufficiently definite structure" or "function without reciting sufficient structure for performing that function."[49] Because the claim limitation discloses sufficiently definite structure, the court finds that claims 1 and 25 do not fall within the scope of § 112 ¶ 6.

### C.  Disputed Term in the '337 Patent

| Term | Really Right Stuff's Construction | Field Optics Research's Construction | Patent Reference (col: lines) |
|---|---|---|---|
| "not releasable" ('337 Patent, Claims 1(d) and 25(d)) | Plain meaning | Not intended for release | 4:2-32, 5:28-57 |

Really Right Stuff asks the court to construe "not releasable" according to its plain meaning.[50] It asserts that if the term needs further construction, then "not capable of being released," a definition from an online dictionary, would be "appropriate and consistent."[51]

---

[48] *Personalized Media Comms., LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998).
[49] *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (quoting *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed Cir. 2000)); *see Apex*, 325 F.3d at 1372 ("The fact that a particular claim term is defined in functional terms is not sufficient to convert a claim limitation into a 'means for performing a specified function' within the meaning of 112(6)." (quoting *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996))).
[50] ECF No. 112.
[51] ECF No. 117 at 19.

Field Optics Research's proposed construction of "not releasable" is "not intended for release."[52] In support of its construction, Field Optics Research also cites an ordinary dictionary definition and reiterates the language of the specification referring to the retaining member and plug, arguing that these structures "are intended to retain the clamp body … and the base … together without any intention of release by movement of the second member …."[53]

Field Optics Research's proposed construction is problematic. As discussed above, the retaining member and plug illustrated in the specification are not described by the language in claims 1(d) and 25(d), which instead concerns and qualifies the operation of the second member.

In addition, the Field Optics Research's invitation to consider subjective intent when construing the claim language invites more confusion than clarification. *Every* claim in a patent could be read to express the intent of an invention, and a consideration of the mental state of either the patentee or the designer of an allegedly infringing device would confuse a jury tasked with determining what a device *does* and not what it is *meant to do*. Adopting Field Optics Research's definition would both impermissibly narrow the scope of the claim language (by suggesting that an alleged infringer could avoid infringement where the device designer intended for movement of the second member to allow release but did not achieve this result) while also broadening the scope (by allowing the patentee to claim infringement against a device where movement of the second member *did* release the first and second clamp members from the base but where this capability was not the designer's intent).

---

[52] ECF No. 114.
[53] ECF No. 114 at 9.

Field Optics Research contends that it is inadequate for the court to construe a term according to its plain meaning when the parties dispute the ordinary meaning of that term.[54] This can be the case where the proper scope of the term or terms truly are at issue and the lack of construction permits the parties to argue and the jury to adopt its own construction.[55] But the context of the claim language in which "not releasable" occurs makes the result here clear enough for a person of ordinary skill in the art. The patent discloses a "second member" and states "said first clamp member and said second clamp member not releasable from said base by movement of said second member."[56] In other words, the movement of the second member cannot release the first and second clamp members. This is equivalent to Really Right Stuff's proposed "not capable of being released" construction, which is supported by the claim language and which the court therefore adopts.[57]

### D.  Disputed Terms in the '172 Patent

Really Right Stuff asserts claim 29 of the '172 patent against Field Optics Research. Claim 29 reads as follows, with the contested terms in bold:

---

[54] ECF No. 114 at 10 (quoting *O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008) ("A determination that a claim term needs no construction or has the plain and ordinary meaning may be inadequate when a term has more than one ordinary meaning or when reliance on a term's ordinary meaning does not resolve the parties' dispute.") (quotations omitted)).
[55] *Id.* at 1361-62.
[56] ECF No. 113 at 115 ('337 patent 4:2-32).
[57] ECF No. 117 at 19.

29. An apparatus for engaging photographic equipment to a support, said apparatus comprising:

(a) a member defining a channel having a first side wall capable of lateral movement with respect to a second side wall;

(b) a lever capable of causing said lateral movement and movable between a first position and a second position, said lever engaged on a **side** of said member, said **side** defining opposed first and second corners; and

(c) a **handle portion** of said lever where said **handle portion** extends beyond said first corner when in said **first position** and extends beyond and **around** said second corner when in said **second position**.

1. **"side"**

| Term | Really Right Stuff's Construction | Field Optics Research's Construction | Patent Reference (col: lines) |
|------|-----------------------------------|--------------------------------------|-------------------------------|
| "side"<br><br>('172 Patent, Claim 29(b)) | Plain meaning | A flat outer surface of an object | 9:1-10:6 |

Really Right Stuff asks the court to construe "side" according to its plain meaning.[58] It offers no real analysis of the intrinsic evidence, instead simply listing a host of what it describes as "well-known and appropriate definitions" from four different ordinary dictionaries.[59] This panoply of possibilities is insufficient.

Field Optics Research's proposed construction is: "a flat outer surface of an object."[60] In support of its construction, Field Optics Research avers that the patent specification discloses a single embodiment and that the side of this embodiment is a flat outer surface, as depicted in

---

[58] ECF No. 112 at 5.
[59] *See* ECF No. 117 at 8–9.
[60] ECF No. 114 at 5.

Figure 4. Furthermore, Field Optics Research observes that the specification describes the "side" of related prior art clamps as "an outer lateral surface of the clamp."[61]

The court agrees with Field Optics Research that the specification's description of related prior art is helpful to understand how the patentee defines the term "side." The court disagrees with Field Optics Research, however, that the adjective "flat" must be appended to this definition. The side of a geometrical solid *may* be flat, as in the side of rectangular building, or it may be curved, as in the side of a grain silo. A person of skill in the art would understand "side" to include curved as well as flat sides to an object. The claim language specifies that the relevant "side" defines "opposed first and second corners," thereby suggesting something other than a true cylinder. But there is nothing in the claim language to indicate that the side must be flat, rather than convex or concave.

As evidence to the contrary, Field Optics Research refers to Figure 4 in the specification, which depicts a flat-sided device to illustrate the preferred embodiment of the clamping apparatus. But the court cannot import limitations from the specification where a patentee has not disavowed the full scope of a claim term,[62] even when the specification only discloses a single embodiment.[63]

Field Optics Research cites *Apple Inc. v. Andrea Electronics Corporation*[64] for the proposition that a single, preferred embodiment *may* limit the scope of a claim term. But this case is distinguishable. In *Apple*, the Federal Circuit found that the only reference in a patent's

---

[61] ECF No. 22-1 at 13.
[62] *Phillips*, 415 F.3d at 1323.
[63] *Mass. Inst. of Tech. & Elecs. for Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1352 (Fed. Cir. 2006) ("Although the single disclosed scanner in the specification includes this limitation, we do not confine the claim to the disclosed embodiments.").
[64] 949 F.3d 697 (Fed. Cir. 2020).

written description to the term "periodically" gave a specific example ("for example, every 5 seconds") and therefore supported a conclusion that a person of skill in the art would understand the term to mean "at regular intervals of time" rather than "from time to time."[65] The court found that this construction was further supported by extrinsic evidence in the form of expert testimony.[66] There is no similar written clarification or expert testimony here to support a limitation of the term "side" to a "flat side."

The court therefore construes "side" as an "outer surface of an object."

### 2. "around"

| Term | Really Right Stuff's Construction | Field Optics Research's Construction | Patent Reference (col: lines) |
|---|---|---|---|
| "around"<br><br>('172 Patent, Claim 29(c)) | Plain meaning | Wrap-around | 9:1-10:6 |

Really Right Stuff asks the court to construe "around" according to its plain meaning. Field Optics Research suggests "wrap-around" and supports its proposed construction by referring to the prosecution history.

The '172 patent was amended to avoid anticipation by prior art:

The Examiner rejected claim 29 under 35 U.S.C. § 102(e) as being anticipated by Vogt, U.S. Patent No. 6,435,738. Claim 29 has been amended to include the limitation of "a handle portion of said lever where said handle portion extends beyond said first corner when in said first position and extends beyond *and around* said second corner when in said second position."[67]

---

[65] *Id.* at 707–08.
[66] *Id.* at 708 ("Apple's expert witness admitted during his deposition that, 'out of the context of the '345 [patent],' the definition of 'periodically' is 'at regular time intervals.'").
[67] ECF No. 113 at 47 (emphasis in original, denoting amended language).

The '738 patent disclosed a similar photographic clamping device, but one in which the operational lever lay flush against the side of the device and did not extend beyond any corners.[68] To avoid anticipation, the '172 patentee added the phrase "and around," stating that "[s]upport for this amendment may be found on page 8 of the specification." That section of the specification provides:

> The cam lever …, however, includes a handle portion … that extends from the yoke …. The handle portion … is elongate and has a sufficient length to extend beyond, and curve around, a lateral corner … of the clamp … when the cam lever is in the second, or locked position as seen in FIG. 4. The cam lever also extends beyond the opposed lateral corner … when the cam lever is in the first position as seen in FIG. 1. The cam lever … therefore is easily accessible even cured [sic] to the clamp.[69]

The patent's written description further clarifies that ease of access to the cam lever is one of the problems the invention addresses: "[T]he lever in existing quick-release clamps is positioned solely on an outer lateral side of the clamp, underneath one side of the camera body. This position makes it awkward to reach underneath the camera to operate the lever."[70]

While the court agrees that the prosecution history is relevant to a determination of the scope of the claims, it finds that the term "around" does not require further construction. The term was added to the claim to avoid anticipation, but there was no clarification of an existing term in a way that would limit that term's scope. Without any additional qualification, the term "around" sufficiently describes the characteristics of a lever's length and shape in a way that avoids anticipation by the prior art and is not ambiguous.

---

[68] ECF No. 119-1 at 3.
[69] ECF No. 113 at 19 (6:15-23).
[70] ECF No. 22-1 at 13.

At the *Markman* hearing, Field Optics Research argued that the term "around" was ambiguous because it could also mean "near" or "proximate." But in the context of the claim limitation language ("said handle portion … extends beyond and around said second corner"), the court finds that a person of ordinary skill in the art would not find the term ambiguous.

In addition, Field Optics Research's proposed construction, "wrap-around," invites more confusion than clarity. It is unclear whether a person of skill in the art would understand that a handle portion that "extends beyond and *wraps around* said second corner" would be different from a handle portion that "extends beyond and *around* said second corner." If anything, the definition "wrap-around" suggests that the end of the handle portion must curve inwards toward the device. But such a connotation contradicts the teaching of the specification, which shows an embodiment of the lever featuring a handle portion that first curves toward the device and then away.[71] At the *Markman* hearing, Field Optics Research also proposed "curve around" as a definition. But this definition again limits the scope of the claim in a way that is not required or suggested by the plain meaning of the word "around" or the prosecution history, as the claim could disclose an embodiment in which the handle portion of the lever extends beyond and around the second corner at a right angle and not as a curve.

The court therefore finds that the term "around" should be construed according to its plain meaning. Field Optics Research's proposed construction imports limitations that are not supported.

---

[71] *See* Figures 8A, 8B, and 8D, ECF No. 22-1 at 8.

### 3. "handle portion"

| Term | Really Right Stuff's Construction | Field Optics Research's Construction | Patent Reference (col: lines) |
|---|---|---|---|
| "handle portion" ('172 Patent, Claim 29(c)) | Plain meaning | End portion of lever | 9:1-10:6 |

Really Right Stuff asks the court to construe "handle portion" according to its plain meaning. Field Optics Research's proposed construction is: "end portion of lever."

Similar to its argument concerning the term "around," Field Optics Research points to the prosecution history and the patentee's amendment of claim 29 to avoid anticipation by the '738 patent. Field Optics Research contends that the patentee disavowed the full scope of the phrase "handle portion" when it amended claim 29 to include the limitation that the lever extend beyond and around the second corner when in the second position, thereby making it easier to release the lever when a camera is mounted.

The court finds that the prosecution history does not indicate disavowal of the full scope of the term. Moreover, Field Optics Research's proposed construction contradicts the description of the handle portion found in the specification. Field Optics Research's construction would constrict the handle portion to the "end portion of the lever," which is presumably that part of the lever at its tip. But the description of the preferred embodiment states that the handle portion "is *elongate* and has a sufficient length to extend beyond, and curve around, a lateral corner …."[72]

---

[72] ECF No. 22-1 at 15 (emphasis added).

Furthermore, the handle portion "extends from the yoke[,]" suggesting that the handle portion includes the part of the lever that is *not* the yoke.

While the patent extended the length of the lever "beyond *and around* said second corner" to avoid anticipation with the prior art, nothing in the prosecution history suggests that this extension relegated the handle portion to the end of the lever rather than simply extending the entire handle portion. The design of the lever makes the quick-release mechanism easier to operate when a camera is mounted, but there is no reason that an operator need grip the lever at its end and not closer to the yoke.

The court therefore finds that the term "handle portion" requires no further construction. Field Optics Research's proposed construction is not supported.

### 4. "first position"

| Term | Really Right Stuff's Construction | Field Optics Research's Construction | Patent Reference (col: lines) |
|------|-----------------------------------|--------------------------------------|-------------------------------|
| "first position" ('172 Patent, Claim 29(c)) | Plain meaning | Unlocked position of the clamp | 9:1-10:6 |

Really Right Stuff asks the court to construe "first position" according to its plain meaning. Field Optics Research's proposed construction is: "unlocked position of the clamp."

The language of claim 29 does not specify that the first position must be the unlocked position and there is little distinction made in the claim to differentiate the first position from the second position—which is not true for other claims of the patent. Claim 8, for instance, specifies that "said force increases when said lever is in said first position and is moved towards said

second position,"[73] thus allowing a person of skill in the art to differentiate between the two positions.

The only distinction between the first and second positions in claim 29 is that the handle portion of the lever extends "beyond said first corner when in said first position" whereas the handle portion extends "beyond *and around* said second corner when in said second position."[74] But this distinction was relevant during the patent prosecution. As described above, the patentee amended the application for patent '172 to avoid anticipation, and the innovation that patent '172 provided in claim 29 was to allow for easier operation of a clamp when the camera was mounted (i.e., locked). The patentee amended claim 29 by adding the language "and around," but only chose to do so by amending the description of the handle portion in the second position. Because the invention is concerned with providing a quick-release mechanism when the camera is mounted and the clamp is in the locked position, the patentee's decision to specify that the handle portion extends *around* the second corner when in the second position, but makes no such qualification concerning the first position, demonstrates that the patentee identified the second position as the locked position. Therefore, the court finds that the patentee disclaimed the full scope of the terms "first position" and "second position" to avoid anticipation.

This construction is also supported by the specification. The preferred embodiment describes a "first, unlocked position" and a "second, locked position."[75] The force profile for the embodiment shows that no force is applied in the "first position."[76] And the specification contains the following description: "The outwardly directed force … is at a maximum when the

---

[73] ECF No. 22-1 at 16.
[74] ECF No. 22-1 at 17.
[75] ECF No. 22-1 at 14.
[76] ECF No. 22-1 at 5.

lever … is in the second position, *i.e. when the channel … is intended to grip photographic equipment*." The Federal Circuit has held that the use of the abbreviation "i.e." is often definitional.[77] And while the court will not import limitations from the preferred embodiment that the patentee has not specifically disclaimed, the court finds that the addition of the words "and around" during the prosecution history—and specifically the addition of those words in reference to the second, but not the first, position—provide sufficient evidence that the patentee disclaimed the scope of the otherwise more general terms "first position" and "second position."[78]

The court therefore construes "first position" as the "unlocked position of the clamp."

### 5. "second position"

| Term | Really Right Stuff's Construction | Field Optics Research's Construction | Patent Reference (col: lines) |
|---|---|---|---|
| "second position"<br><br>('172 Patent, Claim 29(c)) | Plain meaning | Locked position of the clamp | 9:1–10:6 |

Really Right Stuff asks the court to construe "second position" according to its plain meaning. Field Optics Research proposes that the "second position" is the "locked position of the clamp."

---

[77] *Edwards Lifesciences, LLC v. Cook Inc.*, 582 F.3d 1322, 1334 (Fed. Cir. 2009) ("[T]he specification's use of 'i.e.' signals an intent to define the word to which it refers….").

[78] Really Right Stuff points out that, according to the specification, "it should be understood that levers of other shapes may be used to achieve the same or similar force profiles. Further, other structures may be substituted for the lever, such as a plunger or a button." ECF No. 22-1 at 15. But the shape of the lever does not affect the force profile that differentiates "first position" from "second position." In any event, the court's construction of "first position" relies primarily on the claim language and the prosecution history, and not on the use of this term in the preferred embodiment.

For the reasons stated above, the court agrees with Field Optics Research and construes the term to mean the "locked position of the clamp."

### E. Conclusion

| Term | Really Right Stuff's Construction | Field Optics Research's Construction | Patent Reference (col: lines) | Court's Construction |
|------|-----------------------------------|--------------------------------------|-------------------------------|----------------------|
| not releasable ('337 Patent, Clams 1(d) and 25(d)) | Plain meaning | Not intended for release | 4:2-32 | Not capable of being released |
| side ('172 Patent, Claim 29(b)) | Plain meaning | A flat outer surface of an object | 9:1-10:6 | An outer surface of an object |
| around ('172 Patent, Claim 29(c)) | Plain meaning | Wrap-around | 9:1-10:6 | No construction necessary |
| handle portion ('172 Patent, Claim 29(c)) | Plain meaning | End portion of lever | 9:1-10:6 | No construction necessary |
| first position ('172 Patent, Claim 29(c)) | Plain meaning | Unlocked position of the clamp | 9:1-10:6 | Unlocked position of the clamp |
| second position ('172 Patent, Claim 29(c)) | Plain meaning | Locked position of the clamp | 9:1-10:6 | Locked position of the clamp |

### ORDER

The court construes the disputed terms as identified in the table above.

The court also finds that the language "said first clamp member and said second clamp member not releasable from said base by movement of said second member" in the '337 Patent is not functional language and therefore does not fall within the meaning of 35 U.S.C. § 112 ¶ 6.

Accordingly, the court GRANTS IN PART and DENIES IN PART both the Plaintiff's and the Defendant's motions for claim construction.[79]

Signed September 29, 2023.

BY THE COURT

David Barlow
United States District Judge

---

[79] ECF Nos. 112, 114.

22