THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| REALLY RIGHT STUFF,<br><br>            Plaintiff,<br><br>v.<br><br>FIELD OPTICS RESEARCH,<br><br>            Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART [146] DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING [148] PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:20-cv-00345-DBB-DBP<br><br>District Judge David Barlow |

Plaintiff Really Right Stuff accuses Defendant Field Optics Research of infringing various claims of U.S. Patent Numbers 6,773,172 ("'172 Patent"), 10,612,718 ("'718 Patent"), and 10,585,337 ("'337 Patent").[1] On September 29, 2023, the court issued its claim construction on six disputed terms.[2] Now, the parties both move for summary judgment.[3] For the following reasons, the court grants in part Defendant's Motion, and denies Plaintiff's Motion.

---

[1] Am. Compl. ¶¶ 11–34, ECF No. 22; Pl.'s Disclosure of Final Infringement Contentions 2 ("Pl.'s Infringement Contentions"), ECF No. 99-1; Pl.'s Supplemental Final Infringement Contentions 1 ("Pl.'s Supplemental Infringement Contentions"), ECF No. 78; *see also* U.S. Patent No. 6,773,172 (filed Aug. 20, 2003) ("'172 Patent"); U.S. Patent No. 10,612,718 (filed Aug. 10, 2018) ("'718 Patent"); U.S. Patent No. 10,585,337 (filed Mar. 21, 2019) ("'337 Patent").
[2] Mem. Decision and Order on Cross-Motions for Claim Construction ("Court's Claim Construction"), ECF No. 145.
[3] Def.'s Mot. for Summ. J. Under Rule 56 ("Def.'s Mot."), ECF No. 146; Pl.'s Cross Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 148.

## BACKGROUND

This case concerns mounting devices used to stabilize cameras or firearms. Plaintiff alleges that a number of Defendant's products infringe three of its patents: the '172 Patent, the '718 patent, and the '337 Patent. Generally, the '172 Patent "relates to a clamp for mounting photographic equipment to a support, such as a tripod or ball head."[4] For visual reference, the following is an embodiment of the '172 Patent:

### Embodiment of the '172 Patent



---

[4] '172 Patent col. 1 ll. 6–8.

Similarly, the '718 Patent relates to "a dual clamping device that works in conjunction with commonly available dovetail brackets for imaging devices and commonly available accessory rails for rifles."[5] The following is an embodiment of the '718 Patent:

**Embodiment of the '718 Patent**



Finally, the '337 Patent "generally relates to a camera mount, and in particular to a camera mount suitable for taking panoramic pictures."[6] The following is an embodiment of the '337 Patent:

---

[5] '718 Patent col. 1 ll. 10–14.
[6] '337 Patent col. 1 ll. 28–30.

3

**Embodiment of the '337 Patent**



Defendant's products at issue are identified in the record only by their product codes: FBT-ASPL, FBT-ASFPL, FBT-ASFPL-NP, FBH-44DT, FBH-55DT, and FPH-ULP.[7]

On September 29, 2023, the court issued its claim construction.[8] First, the court found that "a person of ordinary skill in the art would have, through education or practical experience, the equivalent of a bachelor's degree in mechanical engineering or a related field and would understand the basics of designing and manufacturing clamping devices."[9] Next, the court construed the following terms: "not releasable" as used in claims 1 and 25 of the '337 Patent

---

[7] *See* Pl.'s Mot. 2–3; Pl.'s Claim Appendices, ECF No. 148-1.
[8] *See* Court's Claim Construction.
[9] *Id.* at 5.

4

means "[n]ot capable of being released"; "side" as used in claim 29 of the '172 Patent means an

"outer surface of an object"; "around" as used in claim 29 of the '172 Patent was construed in

accordance with its plain and ordinary meaning; "handle portion" as used in claim 29 of the '172

Patent required no further construction; "first position" as used in claim 29 of the '172 Patent

meant the "unlocked position of the clamp"; and "second position" as used in claim 29 of the

'172 Patent meant the "locked position of the clamp."[10]

On October 27, 2023 Defendant filed its cross-motion for summary judgment,[11] and on

November 27 Plaintiff filed its cross-motion for summary judgment.[12] Both motions were fully

briefed on January 5, 2024.[13] In its reply, Plaintiff objected to evidence that Defendant included

in its own reply.[14] In the alternative, Plaintiff moved for leave to file a sur-reply.[15] This motion

was fully briefed on January 31, 2024.[16]

## STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."[17] "A fact is material if, under the

---

[10] *Id.* at 9–21.
[11] Def.'s Mot.
[12] Pl.'s Mot.
[13] *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Resp."), ECF No. 149; Def.'s Reply in Support of Summ. J. Under Rule 56 ("Def.'s Reply"), ECF No. 150; Def.'s Resp. to Pl.'s Cross Mot. for Summ. J. Under Rule 56 ("Def.'s Resp."), ECF No. 151; Pl.'s Reply to Def.'s Resp. to Cross Mot. for Summ. J. ("Pl.'s Reply"), ECF No. 152.
[14] *See* Pl.'s Reply 4–6.
[15] Pl.'s Alternative Mot. for Surreply to Def.'s Mot. for Summ. J. ("Pl.'s Mot. for Surreply"), ECF No. 153.
[16] *See* Def.'s Resp. to Pl.'s Alternative Mot. for Surreply, ECF No. 155; Pl.'s Reply to Def.'s Resp. to Alternative Mot. for Surreply to Def.'s Mot. for Summ. J., ECF No. 156.
[17] Fed. R. Civ. P. 56(a).

governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented."[18] Where the moving party does not bear the ultimate burden of proof on an issue at trial, the party may simply point out to the court the lack of evidence to support the nonmoving party's case.[19] The burden then shifts to the nonmoving party to demonstrate that there is a genuine dispute of material fact for trial.[20] But when the moving party bears the ultimate burden of proof at trial, the party must make an initial showing sufficient to show that "no reasonable trier of fact could find other than for the moving party."[21]

Further, "[c]ross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."[22] Therefore the court must review each motion separately and must draw all reasonable inferences in the non-moving party's favor.[23] In other words, if after such a review there remain disputes of material fact, summary judgment as to either side will be inappropriate.[24] However, if the facts underlying both motions "are not in dispute and the parties only disagree about" the relevant law, "summary disposition is appropriate."[25]

---

[18] *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020) (quoting *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015)).
[19] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).
[20] *Id.* at 324.
[21] *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015) (quoting *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)).
[22] *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 438 F.3d 1025, 1030 (10th Cir. 2007) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979)).
[23] *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 906–07 (10th Cir. 2016).
[24] *Christian Heritage Acad.*, 438 F.3d at 1030.
[25] *Id.*

## DISCUSSION

Plaintiff argues that claim 29 of the '172 Patent is infringed by the FBT-ASPL, FBT-ASFPL, FBT-ASFPL-NP, FBH-44DT, FBH-55DT, and FBH-ULP,[26] and it moves for summary judgment on those issues.[27] Defendant moves for summary judgment on the grounds that this claim is obvious and that its products do not infringe.[28] Next, Plaintiff alleges that claims 1, 3, 4, 10, 11, 12, 13, 14, 15, and 20 of the '718 Patent are infringed by the FBT-ASPL and FBH-44DT,[29] and it moves for summary judgment on those issues.[30] Defendant moves for summary judgment on the grounds that each of these claims is obvious, that the dependent claims are anticipated, and that its products do not infringe.[31] Finally, Plaintiff alleges that claims 1, 7, 11, 18, 25, 26, 30, 33, 35, and 42 of the '337 Patent are infringed by the FBT-ASPL and FBT-ASFPL,[32] and it moves for summary judgment on those issues.[33] Defendant moves for summary judgment on the grounds that each of these claims is obvious and that its products do not infringe.[34]

---

[26] Pl.'s Infringement Contentions 2; Pl.'s Claim Appendices A–F.
[27] Pl.'s Mot. 2–3, 11–12, 13–15.
[28] Def.'s Mot. 32–39.
[29] Pl.'s Infringement Contentions 2; Pl.'s Claim Appendices I–J.
[30] Pl.'s Mot. 2–3, 13, 18–20.
[31] Def.'s Mot. 6–17.
[32] Pl.'s Infringement Contentions 2; Pl.'s Claim Appendices G–H.
[33] Pl.'s Mot. 2–3, 12–13, 15–18.
[34] Def.'s Mot. 18–31.

## I.   Obviousness

"Obviousness is a legal question based on underlying factual determinations."[35] Under 35 U.S.C. § 282 "[a] patent shall be presumed valid" and "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."[36] The Supreme Court has held that this means that a defense of invalidity must be proved by clear and convincing evidence.[37] However, evidence not considered by the Patent and Trademark Office ("PTO") may carry more weight.[38] In addition, "[w]hen determining the validity of the claims of a patent, each claim must be separately considered: 'Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independent of the validity of other claims.'"[39] Obviousness renders a claim invalid under 35 U.S.C. § 103.[40]

Under 35 U.S.C. § 103, a patent may not be issued "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."[41] The Supreme Court has adopted four factors—known as the *Graham* factors—courts should consider when evaluating obviousness:

---

[35] *Intercont'l Great Brands LLC v. Kellogg N. Am. Co.*, 869 F.3d 1336, 1343 (Fed. Cir. 2017).
[36] 35 U.S.C. § 282(a).
[37] *Microsoft Corp v. i4i Ltd. P'ship*, 564 U.S. 91, 100–103, 113–14 (2011).
[38] *Id.* at 111.
[39] *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1379–80 (Fed. Cir. 2002) (quoting 35 U.S.C § 282) (emphasis removed).
[40] *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 407 (2007).
[41] 35 U.S.C. § 103(a). While the '337 Patent was filed before the America Invents Act's ("AIA") effective date, *see* Pub. L. No. 112-29, § 3(n), 125 Stat. 293 (2011), the pre-AIA and post-AIA versions of 35 U.S.C. § 103(a) are materially identical.

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art are resolved. . . . Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.[42]

A patent "claiming the combination of elements of prior art is obvious . . . . [i]f a person of ordinary skill can implement a predictable variation" on prior art.[43] In more difficult cases, courts must "look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art[.]"[44] Ultimately, "the analysis need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ."[45] And "[t]he reason, suggestion, or motivation to combine may be found explicitly or implicitly: 1) in the prior art references themselves; 2) in the knowledge of those of ordinary skill in the art that certain references, or disclosures in those references, are of special interest or importance in the field; or 3) from the nature of the problem to be solved."[46]

However, a person of ordinary skill in the art is not charged with knowing all other arts; therefore "for an obviousness determination, a reference may only qualify as prior art that a

---

[42] *KSR Int'l*, 550 U.S. at 406, 415 (quoting *Graham v. John Deere Co. v. Kansas City*, 383 U.S. 1, 17–18 (1966)).
[43] *Id.* at 417.
[44] *Id.* at 417–18.
[45] *Id.* at 418.
[46] *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir. 2009).

person of ordinary skill in the art would look to if it is 'analogous to the claimed invention.'"[47]

Two tests are used to determine whether art qualifies as analogous: "(1) whether the art is from

the same field of endeavor, regardless of the problem addressed and (2) if the reference is not

within the field of the inventor's endeavor, whether the reference still is reasonably pertinent to

the particular problem with which the inventor is involved."[48] Courts determine the field of

endeavor "by reference to explanations of the invention's subject matter in the patent application,

including the embodiments, function, and structure of the claimed invention."[49] A reference is

reasonably pertinent if it "logically would have commended itself to an inventor's attention in

considering his problem. If a reference disclosure has the same purpose as the claimed invention,

[then] the reference relates to the same problem, and that fact supports use of that reference in an

obviousness rejection."[50] "Whether a prior art reference qualifies as analogous prior art is a

question of fact[.]"[51]

Finally, "where . . . the content of prior art, the scope of the patent claim, and the level of

ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent

in light of these factors, summary judgment is appropriate."[52]

---

[47] *Netflix, Inc. v. DivX, LLC*, 80 F.4th 1352, 1358 (Fed. Cir. 2023) (quoting *Bigio*, 381 F.3d at 1325).

[48] *Id.* (quoting *Airbus S.A.S. v. Firepass Corp.*, 941 F.3d 1374, 1379 (Fed. Cir. 2019)).

[49] *Id.* at 1359 (quoting *Bigio*, 381 F.3d at 1325).

[50] *Sci Plastic Products, Inc. v. Biotage AB*, 766 F.3d 1355, 1359 (Fed. Cir. 2014) (quoting *Innovation Toys, LLC v. MGA Ent., Inc.*, 637 F.3d 1314, 1321 (Fed. Cir. 2011)).

[51] *Netflix*, 80 F.4th at 1358.

[52] *KSR Int'l*, 50 U.S. at 427; *see also Intercont'l Great Brands*, 869 F.3d at 1343 ("Among the factual determinations are 'the scope and content of the prior art, differences between the prior art and the claims at issue, the level of ordinary skill in the pertinent art, and any objective indicia of non-obviousness.' Also a fact question . . . is whether the relevant skilled artisan had a motivation to combine pieces of prior art in the way eventually claimed in the patent at issue. Once the relevant fact issues are resolved, '[t]he ultimate judgment of obviousness is a legal

Before the court applies the obviousness standard to the claims at issue, there are two preliminary issues that must be addressed: the effect of the patent examiner's determinations on anticipation and obviousness, and whether expert testimony is needed for any of the claims at issue.

### A.    Examiner's Determinations

Each of the independent claims at issue were initially rejected by the U.S. Patent and Trademark Office for either obviousness or anticipation.[53] In response, the patentee amended each of the claims.[54] Defendant repeatedly asserts—without citation to legal authority—that because the patentee did not "traverse" a rejection, it conceded the rejection was valid.[55] Plaintiff disputes that a failure to traverse a rejection is tantamount to a concession.[56]

The court understands Defendant's argument to be essentially one of estoppel—*i.e.* because the patentee amended its claims rather than appealing the examiner's determination, Plaintiff is now estopped from arguing that the examiner's rejection was baseless. The Supreme Court has held that when a patentee chooses to amend a claim in response to an examiner's rejection and such an amendment narrows the scope of the claim, the patentee is estopped from

---

determination' for the court." (citations omitted) (quoting *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013); *KSR*, 550 U.S. at 427)); *id.* at 1344–45 nn.5–6 (compiling cases granting and denying summary judgment on obviousness).

[53] *See* JA 46 (rejecting claim 29 of the '172 Patent for anticipation); *id.* 377–378 (rejecting claim 1 of the '718 Patent for anticipation); *id.* 187–89 (rejecting claim 1 of the '337 Patent for obviousness).

[54] *See id.* 40, 42 (amendments to claim 29 of the '172 Patent); *id.* 366–67 (amendments to claim 1 of the '718 Patent); *id.* 171, 177 (amendments to claim 1 of the '337 Patent).

[55] Def.'s Mot. 7, 8, 23, 32; *see also* Def.'s Reply 2.

[56] Pl.'s Resp. 13 n.2.

asserting the broader claim.[57] But such prosecution-history estoppel is limited to a narrowing of the doctrine of equivalents,[58] and is not precisely on-point for the issue here: whether the examiner's determination that the original claim was anticipated or obvious is probative to a subsequent question of whether the amended claim is obvious. The Federal Circuit has repeatedly held that courts are not bound by a patent examiner's determinations on validity, though such determinations are evidence that must be considered.[59] Accordingly, Defendant's apparent estoppel-based argument has no basis in law.

Here, the court concludes that while the obviousness inquiry requires the court to examine the claim as a whole, because Plaintiff does not now argue that the elements initially rejected by the examiner should be reconsidered, the court finds the examiner's determination that the original claims were anticipated or obvious to be highly probative. Accordingly, like the parties, the court focuses its inquiry on whether the elements added to the claim via amendment were obvious in light of the examiner's prior determinations.

## B.   Evidence of Obviousness

Plaintiff suggests that because Defendant does not support its assertions with expert testimony, its arguments have no evidentiary value.[60] Of course it is true that a party's arguments

---

[57] *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 733–37 (2002).
[58] *See id.*; *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 975 (Fed. Cir. 2018) ("Prosecution-history estoppel limits the application of the doctrine of equivalents.").
[59] *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1555 (Fed. Cir. 1985); *Exmark Mfg. Co., Inc. v. Briggs & Stratton Power Products Grp., LLC*, 879 F.3d 1332, 1341 (Fed. Cir. 2018).
[60] Pl.'s Resp. 11–12; *see also id.* 14, 22, 30.

in its legal briefing are not evidence.[61] And indeed, the Supreme Court has observed that "[i]n considering summary judgment on [the question of obviousness] the district court can and should take into account expert testimony[.]"[62] But that does not mean that parties *must* present expert testimony in each and every obviousness case. When technology is simple and easily understandable, expert testimony is not required in order to determine obviousness.[63] The facts that must be found in order to make an obviousness determination are (1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, (3) the necessary level of ordinary skill in the art, and (4) secondary considerations of non-obviousness.[64] And "while an analysis of obviousness will always depend on evidence that supports [these required] factual findings, it may also include recourse to logic, judgment, and common sense available to the person of ordinary skill that do not necessarily require explication in any reference or expert opinion."[65] Indeed, "the use of common sense does not require a 'specific hint or suggestion in a particular reference,' only a reasoned explanation that avoids conclusory generalizations."[66]

---

[61] *See Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1380 (Fed. Cir. 2009).
[62] *KSR Int'l*, 550 U.S. at 427.
[63] *See Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1369 (Fed. Cir. 2004) (quoting *Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1573 (Fed. Cir. 1984)); *Perfect Web Techs.*, 587 F.3d at 1329; *see also Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1365 (Fed. Cir. 2008).
[64] *Perfect Web Techs.*, 587 F.3d at 1327; *KSR Int'l*, 550 U.S. at 406 (quoting *Graham*, 383 U.S. at 17–18).
[65] *Perfect Web Techs.*, 587 F.3d at 1329.
[66] *Id.*

13

Here, the court has already determined the level of ordinary skill in the art,[67] and neither party has raised any secondary considerations.[68] Therefore, the only potential facts in dispute are the scope and content of prior art and the differences between prior art and the claims at issue. The court concludes that the technology is simple and easily understandable. Both the claims and any relevant prior art relate to clamping mechanisms, which consist largely of common, everyday technologies. Therefore, no expert testimony is required to understand the scope and content of the prior art, or the differences between the prior art and the claims at issue.[69]

The court turns now to whether summary judgment is appropriate on whether the claims at issue are obvious.

### C.   '172 Patent – Claim 29

Defendant argues that claim 29 of the '172 Patent is invalid as obvious.[70] The '172 Patent's application was filed on August 20, 2003.[71] Claim 29 recites:

---

[67] *See supra* note 9 and accompanying text.

[68] In its reply brief, Defendant references the market pressures related to claim 29 of the '172 Patent. Def.'s Reply 34–35. However, it does not offer evidence of market pressure, and the court declines to consider that argument as it was raised for the first time on reply.

[69] In its reply brief, Defendant submitted declarations from two individuals in an attempt to address Plaintiff's argument. *See* Def.'s Reply 1; Decl. of Robin Peng in Support of Def.'s Mot. for Summ. J. Under Rule 56, ECF No. 150-1; Decl. of Glen Parshall in Support of Def.'s Mot. for Summ. J. Under Rule 56, ECF No. 150-2. Plaintiff objected to this evidence in its own reply brief, *see* Pl.'s Reply 4–6, and in the alternative, moved for leave to file a surreply, *see* Pl.'s Mot. for Surreply. Typically, the court does not consider evidence submitted on reply. *E.g.*, *Velazquez v. Greyhound Lines, Inc.*, 202 WL 13599706, at *1–2 (D. Utah Nov. 10, 2020); *see* DUCivR 56-1(d) ("The moving party may file a reply. In reply, a party may cite to evidence that was not previously cited only to rebut a claim that a material fact is in dispute. Otherwise, a reply may not contain additional evidence, and, if it does, the court may disregard it."). In any event, the court need not address Plaintiff's objections or motion for leave to file a sur-reply, as Defendant's proffered declarations are not necessary for the resolution of this issue.

[70] Def.'s Mot. 32–38.

[71] *See* '172 Patent.

An apparatus for engaging photographic equipment to a support, said apparatus comprising:

(a) a member defining a channel having a first side wall capable of lateral movement with respect to a second side wall;

(b) a lever capable of causing said lateral movement and movable between a first position and a second position, said lever engaged on a side of said member, said side defining opposed first and second corners; and

(c) a handle portion of said lever where said handle portion extends beyond said first corner when in said first position and extends beyond and around said second corner when in said second position.[72]

Claim 29 in its original form was rejected as anticipated by U.S. Patent Number 6,435,738 ("'738 Patent") and in response the patentee added only the words "and around" to element (c).[73]

The figures from the '172 patent displayed below illustrate the shape and operation of the apparatus recited by claim 29.

**Figure 1 of the '172 Patent**



---

[72] '172 Patent col. 9 l. 1 to col. 10 l. 6.
[73] JA 40, 42, 46; *see also* U.S. Patent No. 6,435,738 (filed Oct. 18, 1999).

15

**Figure 4 of the '172 Patent**



**Figure 8B of the '172 Patent**



In essence, the cam lever shown by element 22 is fastened to a stud, which permits

adjustment in the width of the channel between the body and the adjustable arm (elements 12 and

14 respectively), which allows the apparatus to "either grip or release a pair of rails attached to

16

the base of a camera body[.]"[74] The '172 Patent describes the problem it sought to solve through

a longer lever that wraps around the body of the clamp:

> Referring to FIGS. **8**A–**8**E, the cam lever **22** comprises a shape that assists the
> convenient operation of the clamp **10**. Existing clamps employ levers that are
> exclusively positioned to one of the lateral sides of the clamp. Camera bodies are
> typically positioned directly over these existing levers, which often makes them
> difficult to reach when engaging or releasing the clamp. The cam lever **22**,
> however, includes a handle portion **56** that extends from the yoke **58**. The handle
> portion **56** is elongate and has a sufficient length to extend beyond, and curve
> around, a lateral corner **61** of the clamp **10** when the cam lever is in the second, or
> locked position as seen in FIG. **4**. The cam lever also extends beyond the opposed
> lateral corner **62** when the cam lever is in the first position as seen in FIG. **1**.[75]

In other words, the lever described by claim 29 is structured so that it can be better accessed by

someone seeking to operate it while a camera is clamped by the apparatus.

The court proceeds to an evaluation of the *Graham* factors, but first, addresses

Defendant's argument about the presumption of validity.

### 1.    Presumption of Validity

Defendant first argues that the presumption of validity should be lifted because in 2004

the patent examiner was bound by a more rigid test regarding obviousness.[76] Plaintiff argues that

*KSR* did not significantly change the obviousness test, and that the '738 Patent alone is

insufficient to render claim 29 obvious because it was considered by the examiner.[77] Defendant,

---

[74] '172 Patent col. 2 l. 50 to col. 3 l. 2; *see also id.* col. 3 l. 3 to col. 4 l. 46 (describing the operation of the apparatus in multiple different positions).
[75] '172 Patent col. 6 ll. 9–23; *see also id.* col. 1 l. 50 to col. 2 l. 1 ("Further, the lever in existing quick-release clamps is positioned solely on an outer lateral side of the clamp, underneath one side of the camera body. This position makes it awkward to reach underneath the camera to operate the lever.").
[76] Def.'s Mot. 33–34.
[77] Pl.'s Resp. 10–11, 13–14.

however, cites only inapposite caselaw for the proposition that the presumption of validity can be set aside if the examiner applied a later-overturned test.[78] And the Supreme Court in *Microsoft Corp. v. i4i Limited Partnership* cautioned that the presumption of validity and burden of proof does not change depending on what the PTO did or did not do.[79] Accordingly, Defendant's argument is without merit. But conversely, *Microsoft Corp.* also suggests that Plaintiff's argument that the '738 Patent alone is insufficient to render claim 29 obvious is erroneous.[80] Put another way, the presumption is static; it cannot be strengthened or destroyed.[81]

### 2. Scope and Content of Prior Art

As discussed above, the court only considers prior art that is analogous for purposes of this factor.[82] This means that prior art must either be from the same field of endeavor or reasonably pertinent to the problem the inventor sought to solve.[83] The field of invention listed in the '172 Patent relates to camera supports and supports generally.[84] Here, Defendant points to

---

[78] Defendant cites to *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.* Def.'s Mot. 34 (citing 876 F.3d 1372 (Fed. Cir. 2017)). However, contrary to Defendant's suggestion, *Inventor Holdings* has nothing to say about the presumption of validity. The issue there was about attorney fees. *See Inventor Holdings*, 876 F.3d at 1377–80.

[79] *See Microsoft Corp*, 564 U.S. at 110–11.

[80] *See id.* at 111 ("Simply put, if the PTO did not have all material facts before it, its considered judgment may lose significant force. And concomitantly, the challenger's burden to persuade the jury of its invalidity defense by clear and convincing evidence may be easier to sustain.").

[81] *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1555 (Fed. Cir. 1985).

[82] *See supra* notes 45–51 and accompanying text.

[83] *Id.*

[84] *See* '172 Patent (listing the field of search as 396/419, 396/420, 396/422, 396/428, and 248/187.1); *see also Classification Resources*, U.S. Patent and Trademark Office, https://www.uspto.gov/web/patents/classification/selectnumwithtitle.htm [https://perma.cc/U9RG-SDTS] (last visited May 30, 2024).

two pieces of prior art.[85] The court additionally considers the '738 Patent, as the examiner held that claim 29 of the '172 Patent was initially invalid as anticipated by the '738 Patent.[86]

The '738 Patent "relates to an apparatus for the fixation of an optical apparatus"—in other words, it also describes a mechanism for clamping a camera.[87] Claim 1 of the '738 Patent recites:

> Apparatus for the fixing of an optical apparatus having a guide rail **(1)** to a carrier part **(2)** comprising a first member **(5)** which is connected to the carrier part **(2)** and a second member **(6)** which is adjustable relative to the first member and with a device **(7)** for the fixing of the guide rail **(1)** which is connected to the first member and passes through the second member, characterized in that the device **(7)** has a blocking member **(8)** and a lever **(9)** with a holding device **(10)** standing under spring action, the lever being pivotally mounted on the blocking member and contacting the second member **(6)** in such a way that the lever fixes the optical apparatus in a first position, frees the optical apparatus for displacement in a second position and frees the optical apparatus for removal in a third position, and that the blocking member **(8)** has a first shoulder **(14)** and a second shoulder, **(15)** and the blocking pin **(21)** is movably arranged in the lever **(9)**.

The apparatus claimed is shown in the figures below.

---

[85] *See* Def.'s Mot. 35–38.

[86] JA 40, 42, 46.

[87] '738 Patent col. 1 ll. 4–5; *see also id.* (describing the field of search as 396/419, 396/428).

**Figure 3 of the '738 Patent**



**Figure 5 of the '738 Patent**



That the '738 Patent is in the same field of endeavor as the '172 Patent is not reasonably in dispute, given that both relate to camera clamping mechanisms. Further, the scope of the claims of the '738 Patent also is not reasonably in dispute. Essentially, the '738 Patent recites a camera clamp that can be operated with a cam lever. And notably, nothing in the claims of the '738

20

Patent preclude a longer handle on the cam lever[88]; it is only the figures that suggest such a limitation.

Next, Defendant cites Patent Application Number 2004/0046353 ("'353 Application") in support of its argument.[89] The '353 Application relates to a quick-release clamp for a bicycle axle, which uses a cam lever.[90] Claim 1 of the '353 Application recites:

An improved cam assembly for comprising:

a cam lever head having a long travel face and a cam lever arm, said cam lever head including a cam axle for rotation thereabout by said cam lever arm and hold and release means cooperative with said cam axle for providing multiple locking positions of rotation of said cam lever arm . . . .[91]

This lever is shown in the figures below.

---

[88] *Cf.* '738 Patent col. 2 ll. 39–66 (merely describing the apparatus as having a lever).

[89] *See* Def.'s Mot. 35–38; *see also* U.S. Application Number 2004/0046353 (filed Sept. 8, 2003). Defendant also cites U.S. Patent No. 4,926,576 (filed Aug. 9, 1988) ("'576 Patent"). *See* Def.'s Mot. 35–38. The '576 Patent "relates to a mounting device for fixing an instrument on a weapon[.]" '576 Patent col. 1 ll. 6–7. Plaintiff argues that the '576 Patent is not analogous, and therefore, should not be considered by the court. Pl.'s Resp. 14–15. The court finds that it need not reach this issue.

[90] '353 Application 1.

[91] *Id.* at 3.

21

**Figure 3 of the '353 Application**



**Figure 5 of the '353 Application**



Plaintiff argues the '353 Application is not analogous to the '172 Patent.[92] While the court finds that the '353 Application is not from the same field, it does find that there is no genuine dispute that the '353 Application is reasonably pertinent to the problem sought to be solved by claim 29 of the '172 Patent. The lever described by claim 1 of the '353 Application and shown in its figures has the same purpose as the lever described by claim 29 of the '172 Patent—to execute a clamping function. It would be logical for the inventor of the '172 Patent to seek teachings about the length and shape of cam levers from other fields, including bicycles. Indeed, the court takes judicial notice[93] of the fact that the cam lever clamp described in the '353 Application is not particularly unique. A cursory review shows that such levers were in wide use before the '172 Patent, especially in bicycles and scooters.[94]

### 3.   Differences Between Prior Art and the Claimed Invention

At the outset, there is little, if any, significant difference between the '738 Patent and claim 29 of the '172 Patent. Both devices show identical means of clamping a camera to a mount. The only apparent difference—and indeed, the one that the PTO apparently found dispositive—is that the lever handle on the cam lever clamp shown in the figures of the '738

---

[92] Pl.'s Resp. 15–17.

[93] *See Hooper v. City of Tulsa*, 71 F.4th 1270, 1279 n.8 (10th Cir. 2023) (noting that courts may take judicial notice of public records); *see also K/S Himpp v. Hear-Wear Techs., LLC*, 751 F.3d 1362, 1367 (Fed. Cir. 2014) (suggesting courts have discretion to take judicial notice of patents).

[94] *E.g.*, U.S. Patent No. 4,789,176 col. 2 ll. 32–34 (filed Dec. 7, 1987) (noting that the quick-release clamp shown in the figures "may be conventional and form[s] no part of the present invention"); U.S. Patent No. 6,296,322 (filed Nov. 10, 1998); U.S. Patent No. 6,454,363 (filed Sept. 30, 1999); U.S. Patent No. 6,386,643 (filed June 23, 2000); U.S. Patent No. 6,260,931 (filed Sept. 23, 1997); U.S. Patent No. 6,481,729 col. 3 ll. 46–56 (filed Apr. 5, 2001) (noting that "[s]uch locking mechanisms are well known in the art and are therefore not discussed in detail").

Patent is shorter and does not wrap around the corner of the clamp body itself. But any change in the shape of the cam lever could be easily found by reference to other fields, such as bicycles and scooters. While the cam lever clamps shown in those references operate somewhat different mechanisms, in essence they are identical in purpose and function.

There can be no genuine dispute of fact that the '738 Patent discloses a very similar cam lever clamp, that such clamps were in wide usage in other fields, and that the length and shape of those clamps are variable and can be quite similar to the one disclosed by claim 29 of the '172 Patent.

### 4.    Conclusion on Obviousness of Claim 29 of the '172 Patent

Having found that prior art discloses very similar cam lever clamps used for a variety of purposes, including to operate a camera clamping mechanism, the court turns to whether claim 29 is obvious in light of this prior art.

One touchstone that may be used in this analysis is the common sense available to a person of ordinary skill in the art.[95] The problem that the patentee sought to solve with claim 29 was accessing the cam lever while the camera sat atop the clamp.[96] And common sense dictates that a person of ordinary skill in basic physics and mechanics—if not a layperson—would understand that the problem of accessing the lever to release or clamp a camera could be solved through a longer lever that curves around the body of the clamp, as such would provide for easier

---

[95] *See KSR*, 550 U.S. at 420–22; *Perfect Web Techs.*, 587 F.3d at 1328–31.
[96] *See supra* note 75 and accompanying text.

access and better grip.[97] Indeed, longer levers that were contoured to their clamping devices were well known in the prior art.[98] So even assuming that common sense did not make it immediately apparent that a longer, contoured, lever would make access to it much easier, it would be obvious to combine teachings from other fields with the '738 Patent in order to achieve the desired result.

In sum, there is no genuine dispute of material fact regarding the scope and content of prior art or the differences between prior art and claim 29. No reasonable jury could conclude otherwise than that at the time of the invention described in claim 29 of the '172 Patent, the prior art contained cam lever clamps, and that such prior art was analogous. It is nothing more than a commonsense variation on the prior art in this field to add a longer lever that also wraps around the base of the clamping mechanism. Therefore, because the remainder of claim 29 was anticipated by the '738 Patent, and because the only purported innovation is obvious, the whole of claim 29 is invalid as obvious.

### D. '718 Patent

Defendant argues that independent claim 1 and dependent claims 3, 4, 10, 11, 12, 13, 14, 15, and 20 of the '718 Patent are invalid as obvious.[99]

---

[97] In addition, to the extent that the longer lever was designed to allow for easier application of force, *cf.* '172 Patent Fig. 5; *id.* col. 4 l. 30 to col. 5 l. 20 (describing the force profile achieved by the operation of the lever), that too would be obvious to a person of ordinary skill, since it is a basic tenant of physics that a longer lever will allow greater application of force with less effort, *see e .g.*, *Lever*, Brittanica, https://www.britannica.com/technology/lever [https://perma.cc/9PV5-EELV] (last visited May 30, 2024).
[98] *See supra* notes 90–91, 94.
[99] Def.'s Mot. 7–16.

### 1.   Claim 1

Claim 1 of the '718 Patent recites:

An apparatus for selectively engaging a plate for photographic equipment and a Picatinny rail assembly for a firearm, said apparatus comprising:

(a) a body defining a portion of an upper channel having a first side wall;

(b) an arm defining a portion of said upper channel having a second side wall capable of lateral movement with respect to said first side wall suitable to detachably engage a pair of dovetail slots of said plate;

(c) said body defining a portion of a lower channel having a third side wall;

(d) said arm defining a portion of said lower channel having a fourth side wall capable of lateral movement with respect to said third side wall suitable to detachably engage a rail of said Picatinny rail assembly;

(e) wherein said upper channel is at a higher elevation than said lower channel;

(f) said body defining a lower surface between said third side wall and said fourth side wall;

(g) said arm is slidably engaged with a stud extending between said base and said arm;

(h) said stud extending between said base and said arm at a location at least partially directly above a plate defined by said lower surface and said stud at least partially located within a region defined by a perimeter of said lower surface.[100]

Figures 8 and 9 from the '718 Patent illustrate an embodiment of this apparatus, and Figure 5

shows an embodiment being fitted to Picatinny rails.

---

[100] '718 Patent col. 5 ll. 4–30.

**Figure 5 of the '718 Patent**



**Figure 8 of the '718 Patent**



**Figure 9 of the '718 Patent**



The specification describes these figures:

> The adjustable arm **212** is slidably engaged along a threaded stud **222** which is
> threadably secured to corresponding threads **224** in the body **210**. The threaded
> stud **222** is secured to internal threads of a knob **226** together with a cap, together
> with a washer **228**, and arranged through an external opening **230** in the
> adjustable arm **212**. The end of the threaded stud **222** is threadably secured to the

28

threads **224** in the body **210**. Rotation of the knob **226** selectively adjusts the width of the upper channel **214** and is accomplished through manual operation of the knob **226** fastened to the distal end of the stud **222**.[101]

Additionally:

> Alternatively, the adjustable spacing may be achieved with any other suitable structure, such as a threaded fastener or a cam lever. By way of example, one exemplary cam lever is illustrated in [the '172 Patent], incorporated by reference herein in its entirety.[102]

Finally, the specification notes:

> The lower channel **300** also preferably defines a raised central portion, which may be defined by the stud **222**, which preferably has a width suitable to be positioned between a pair of rails of the Picatinny rail. In this manner, the raised central portion will tend to inhibit the clamp from sliding with respect to the Picatinny rail because the raised central portion will come into contact with one of the rails of the Pictinny [sic] rail.[103]

The '718 Patent describes its field of invention as relating to supports and work holders generally,[104] but given that it, like the '172 Patent, also relates to a camera mount, there can be no genuine dispute that it also belongs to the specific field of camera supports.

### i.     Scope and Content of Prior Art

The prosecution history shows that the examiner rejected claim 1 as it was originally filed—which contained only elements (a) through (e)—as anticipated by U.S. Patent Number 8,348,214 ("'214 Patent").[105] Therefore, the court begins with that patent.

---

[101] '718 Patent col. 3 ll. 17–27.

[102] *Id.* col. 3 ll. 27–32.

[103] *Id.* col. 4 ll. 27–34.

[104] *See id.* (listing its field of invention as 248/229.22, 248/229.24, 248/229.12, 248/229.14, 248/316.4, 248/316.6, 269/246, 269/43, and 269/156); *see also Classification Resources*, *supra* note 84.

[105] *See* JA 367–70, 378; *see also* U.S. Patent No. 8,348,214 (filed Jul. 25, 2008).

The '214 Patent "relates to a mounting arrangement for optical devices[.]"[106] In essence, the '214 Patent recites a device consisting of a clamp body, adjustable clamping arm, and clamping mechanism to operate the arm.[107] In addition, there are grooves underneath the clamp body.[108]

**Figure 1 of the '214 Patent**



There is no genuine dispute that the '214 Patent is analogous prior art, given that both patents are within the field of camera supports.[109] Next, there is no genuine dispute of the scope or content of the '214 Patent, especially in light of the examiner's determination.

In support of its argument, Defendant points first to an affidavit from its CEO,[110] Mr. Vince Warner, who avers that Mr. Joseph Johnson, Sr., Plaintiff's CEO, told him at a trade show

---

[106] '214 Patent col. 1 ll. 4–5.
[107] *See id.* col. 1 ll. 5–17, col. 3 l. 36 to col. 4 l. 15, col. 4 l. 50 to col. 5 l. 8.
[108] *Id.*
[109] *See id.* (describing the field as including 248/187.1, 396/428, 396/419, 396/425).
[110] Def.'s Mot. 9.

in 2020 that although the Picatinny rail system described in claim 1 of the '718 Patent had "been out there, no one had ever actually submitted a patent for a design with a raised cross bar[.]"[111] Plaintiff points out that Mr. Johnson disputes the content of the conversation.[112] Accordingly, there is a genuine dispute of material fact over the content of this conversation, and the court will not rely upon it when establishing the scope and content of prior art.

Next, Defendant points to U.S. Patent No. 6,931,778 ("'778 Patent") as analogous prior art.[113] The '778 Patent "is directed to a weapon mount for mounting an auxiliary device . . . to the receiver rail of a weapon."[114] Plaintiff makes no argument regarding the '778 Patent. The court finds that there can be no genuine dispute that the '778 Patent is from the same field as the '718 Patent, given that both patents disclose that they are meant for mounting devices on firearms.[115] Defendant argues that the '778 Patent discloses a Picatinny rail clamp situated in a concave recess.[116] Claim 1 of the '778 Patent recites:

> A connection device for attaching to a receiver rail of a weapon, which receiver rail has a top surface and opposite side surfaces, comprising: a base surface and first and second side members for engaging in an operative position said surfaces of the receiver rail, wherein the base surface is for engaging the top surface of the receiver rail and the first side member is stationary and is for engaging one of the side surfaces of the receiver rail and the second side member is movable between an extended position where it does not securely engage the opposite side surface

---

[111] Aff. of Vince Warner ¶¶ 1–5, ECF No. 146-3.

[112] Pl.'s Resp. 28; Decl. of Joseph Johnson Sr. in Support of Pl.'s Resp. to Def.'s Mot. for Summ. J. and in Support of Pl.'s Cross-Mot. for Summ. J. ¶¶ 15–16, ECF No. 148-1.

[113] Def.'s Mot. 11–12; U.S. Patent No. 6,931,778 (filed Sept. 29, 2003) ("'778 Patent). Defendant also raises U.S. Patent Application Serial No. 2008/0168696 (filed July 17, 2008) as analogous prior art. *See* Def.'s Mot. 9–11. The court finds that it need not address this issue.

[114] '778 Patent col. 1 ll. 9–11.

[115] *See supra* notes 100, 114 and accompanying text.

[116] Def.'s Mot. 11–12.

of the receiver rail and said operative position where it is retracted and securely engages said opposite side surface of the receiver rail, the second side member being part of the clamp which is connected to a bolt having an axial direction, wherein the clamp is pushed and pulled between said extended and retracted positions by pushing and pulling the bolt, and a cam which is rotatable in a plane in which said axial direction of said bolt lies for pushing and pulling the bolt.[117]

This device is shown by Figure 3 below.

**Figure 3 of the '778 Patent**



The specification describes this Figure:

Rail bolt **30** is situated in a concave recess in base **20**, and runs between the pivot pin **38** of the cam, and the outside surface **29** of clamp **24** which is opposite inside surface **26**. . . . The receiver rail has a concave recess into which the rail bolt fits

---

[117] '778 Patent col. 4 ll. 50–68.

when the device is clamped (not shown). This allows for the cam and pivot to be set precisely to allow mounting to the maximum size mounting rail.

. . .

In order to retract the clamp from its completely open position, the cam **17** would be rotated counterclockwise in FIG. **3**, to move the pivot pin outwardly, thus pulling the rail bolt. . . . In order to release the clamp, the cam is rotated in the opposite direction.[118]

In addition, the '778 Patent makes clear that the rail bolt may slot into the groove on a Picatinny Rail or Weaver Rail.[119]

Plaintiff makes no response to Defendant's argument on the '778 Patent. And while the claims of the '778 Patent do not themselves disclose the concave recess in which the bolt sits,[120] the court does not limit its obviousness inquiry to only the claims of prior art.[121] There can be no genuine dispute as to the scope or content of the '778 Patent. The device described includes a base, an adjustable side wall, and a rail bolt operated by a cam lever that allows for clamping. In

---

[118] *Id.* col. 3 ll. 35–62.

[119] *See id.* col. 1 ll. 60–63; *id.* col. 4 ll. 30–39.

[120] *Cf. id.* col. 4 l. 50 to col. 6 l. 37 (merely describing the operation of the bolt in the context of the cam lever and the clamp).

[121] *Teleflex Inc. v. KSR Int'l Co.*, 298 F.Supp.2d 581, 591 (E.D. Mich. 2003) ("Review of prior art, however, is not limited to claims asserted in the prior art. Differences between prior art and the claimed invention are 'ascertained by interpretation of the *teachings* of the prior art and of the *claims* of the patent.'" (quoting Donald S. Chisum, Chisum on Patents § 5.03[5] (2003)); *see also Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*, 555 F.3d 984, 992–93 (Fed. Cir. 2009) (finding a patent obvious, in part due to figures from prior art); *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1568 (Fed. Cir. 1987) ("[A] prior patent must be considered in its entirety, i.e., as a *whole*[.]"); *TorPharm, Inc. v. Ranbaxy Pharmas., Inc.*, 336 F.3d 1322, 1327 (Fed. Cir. 2003) (suggesting courts may consider unpatented inventions as prior art for purposes of an obviousness inquiry).

addition, the specification plainly describes a partially-raised rail bolt that is meant to slot into the recess of a Picatinny Rail.[122]

### ii.   Differences Between Prior Art and the Claimed Invention

As noted above, the examiner initially rejected claim 1 of the '718 Patent as anticipated by the '214 Patent.[123] The patentee then added elements (f) through (h).[124] The parties appear to agree that only elements (g) and (h)—which describe the bore and stud assembly—distinguish claim 1 of the '718 Patent from the '214 Patent.[125] Accordingly, the court finds that there is no genuine dispute of fact that claim 1 of the '718 Patent is nearly identical to the device described by the '214 Patent, save that the bolt or stud described by elements (g) and (h) of claim 1 of the '718 Patent is not present in the '214 Patent.

However, such stud or bolt is present in the '778 Patent. Indeed, the '778 Patent recites a clamping device quite similar to the clamping device disclosed by the '718 Patent. Essentially, both patents disclose a device with an immovable base and a moveable side wall that allows for the device to clamp a rail system attached to a weapon.[126] The moveable side wall is operated via

---

[122] The court takes judicial notice of the fact that several other patents pre-dating the '718 Patent include a bolt meant to slide between Picatinny rails to prevent sliding. *See, e.g.*, U.S. Patent No. 9,976,833, col. 6 l. 65 to col. 7 l. 2 (filed May 22, 2018) (describing a bayonet mount for a rifle "wherein the mounting rail is a Picatinny rail having a plurality of recoil grooves and wherein the forward bolt is configured to pass through one of the recoil grooves to prevent the forward clamp from sliding along the Picatinny rail"); U.S. Patent No. 9,459,078 col. 3 ll. 45–61, col. 7 ll. 5–33,  (filed Aug. 11 2015) (describing an accessory mount for a firearm wherein the firearm includes a Picatinny rail and the screw that clamps the mount also acts as a recoil lug); U.S. Patent No. 6,629,381 col. 6 ll. 21–58, col. 8 ll. 4–16 (filed Feb. 1, 2000) (describing a scope mount for a Picatinny or Weaver rail wherein the mount has an adjustable jaw that is operated through transverse lugs that slide between the notches of the rail).
[123] *See* JA 367–70, 378; *see also* U.S. Patent No. 8,348,214 (filed Jul. 25, 2008) ("'214 Patent").
[124] JA 367–70.
[125] *See* Def.'s Mot. 8; Pl.'s Resp. 27.
[126] *See* '778 Patent col. 4 ll. 50–67; '718 Patent col. 5 ll. 5–30.

an adjustable stud embedded in the base.[127] There are only three small differences: the '778 Patent is expressly limited to operation by a cam lever, while claim 1 of the '718 Patent is not[128]; the claims of the '718 Patent expressly provide that the stud sits in a concave recess, while only the specification of the '778 Patent makes that disclosure[129]; and while the '778 Patent is directed at weapon mounting, the '718 Patent is directed at both camera and weapon supports.[130] Accordingly, there are few material differences between the '778 and '718 Patents.

### iii.    Conclusion on Obviousness of Claim 1 of the '718 Patent

The court finds that there is no genuine dispute of fact as to the scope and content of prior art or the differences between prior art and the claimed invention. The only material difference between the '214 Patent and claim 1 of the '718 Patent is the stud described in elements (g) and (h). The described purpose of the stud in the '718 Patent is to clamp the apparatus to either a rifle or camera, as well as to prevent sliding when attached to a Picatinny rail.[131] And the '778 Patent exhibits an identical stud with an identical purpose, although said stud is not described in the claims themselves. Therefore, given the similarities between the '718 Patent and the '778 and '214 Patents, and taking into account the inferences and creative steps that a person of ordinary skill would employ, it would be obvious to partially raise the stud or bolt used to operate the clamp in order to prevent the clamp from sliding on the mount. Given that the only purported

---

[127] *See* '778 Patent col. 4 ll. 50–67; '718 Patent col. 5 ll. 5–30.
[128] *See* '778 Patent col. 4 ll. 50–67; '718 Patent col. 5 ll. 5–30; *id.* col. 3 ll. 15–35 (noting that the preferred embodiment includes a threaded stud operated by a knob, but the same invention could be operated by a cam lever).
[129] *See* '778 Patent col. 3 ll. 35–62, col. 1 ll. 60–63; *id.* col. 4 ll. 30–39; '718 Patent col. 5 ll. 4–30.
[130] *See* '778 Patent col. 1 ll. 9–11; '718 Patent col. 1 ll. 10–14.
[131] *See* '718 Patent col. 3 ll. 17–27, col. 4 ll. 27–34.

difference between the '214 Patent and the '718 Patent was the partially raised bolt, and said bolt is obvious in light of the '778 Patent, the whole of claim 1 of the '718 Patent is invalid.

### 2. Dependent Claims

Defendant argues that dependent claims 3, 4, 10, 11, 12, 13, 14, 15, and 20 of the '718 Patent are each invalid as either obvious or anticipated because the examiner rejected each of these claims for those reasons and the patentee did not traverse the rejection.[132]

The court need not reach this issue. The Federal Circuit has held in infringement cases that "[w]hen a dependent claim and the independent claim it incorporates are not separately argued, precedent guides that absent some effort at distinction, the claims rise or fall together."[133] And here, in response to Defendant's motion, Plaintiff argues only that "[a]ll other asserted claims depend on claim 1 and thus inherit its patentability."[134] Plaintiff makes no effort to separately argue the dependent claims; therefore, they are invalid as obvious as well.

---

[132] Def.'s Mot. 12–16. Each of these claims is either directly dependent on claim 1 or has multiple layers of dependency on claim 1. *See* '718 Patent col. 5 l. 31 to col. 6 l. 38.

[133] *Soverain Software LLC v. Newegg Inc.*, 728 F.3d 1332, 1335 (Fed. Cir. 2013) (citing *Gardner v. TEC Sys., Inc.*, 725 F.2d 1338, 1350 (Fed. Cir. 1984)); *see also Incept LLC v. Palette Life Scis., Inc.*, 77 F.4th 1366, 1375 (Fed. Cir. 2023).

[134] Pl.'s Mot. 30.

**E.     '337 Patent**

Defendant argues that independent claims 1 and 25, and dependent claims 7, 11, 18, 26, 30, 33, 35, and 42 are invalid as obvious.[135]

**1.     Claim 1**

Claim 1 of the '337 Patent recites:

An integrated panoramic device comprising:

(a) a base having a lower surface suitable for supporting said base;

(b) a first clamp member secured for rotation to said base and comprising a first clamp surface rotatable about a single axis substantially normal to said lower surface, said panoramic device being free from and incapable of said first clamp surface being rotatable about an axis other than said axis substantially normal to said lower surface;

(c) a second clamp member including a second clamp surface slidably secured to said first clamp member and movable as a result of movement of a first member to approach said second clamp surface relative to said first clamp surface to clamp an article therebetween and movable as a result of movement of said first member to separate said second clamp surface relative to said first clamp surface to release an article clamped between said first clamp surface and said second clamp surface;

(d) a second member as a result of movement to selectively impede relative rotation of said first clamp member and said base, said first clamp member and said second clamp member not releasable from said base by movement of said second member, said first clamp member rotatable through 360 degrees with respect to said base; and

(e) wherein said first member is engaged with said first clamp member, wherein said first member passes through a portion of said second clamp member.[136]

---

[135] Def.'s Mot. 22–31.
[136] '337 Patent col. 4 ll. 2–32.

The following figures show a preferred embodiment of claim 1 of the '337 Patent.

**Figure 1 of the '337 Patent**



**Figure 2 of the '337 Patent**



The '337 Patent does not list a field, but it plainly falls within the field of camera supports or supports generally, just like the '172 Patent.[137]

---

[137] *See supra* note 84 and accompanying text.

i.        **Scope and Content of Prior Art**

The prosecution history shows that the examiner initially rejected claim 1 as obvious in light of the '172 Patent and U.S. Patent Number 6,439,515 ("'515 Patent").[138] Therefore, the court begins with those patents. The '515 Patent "relates to a video camera support device. More particularly, the invention relates to a device which supports a video camera and allows the camera to be operated while stationary as well as in motion, wherein the camera is stabilized so that motion artifacts are smoothed or eliminated by the device."[139] Specifically, claim 1 of the '515 Patent recites a camera support device comprising a camera mount, a base, a vertical support, and a gimbal bearing assembly.[140] The following figure shows a preferred embodiment.

---

[138] JA 187–89.
[139] '515 Patent col. 1 ll. 4–10.
[140] *See id.* col. 4 l. 65 to col. 5 l. 21.

**Figure 1 of the '515 Patent**



There is no genuine dispute that the '515 Patent is from the same field as the '337 Patent, given that both inventions are focused on camera support mechanisms. Likewise, there is no genuine dispute as to the scope of the '515 Patent.

40

Next, as discussed above,[141] the '172 Patent "relates to a clamp for mounting photographic equipment to a support, such as a tripod or ball head."[142] Therefore, there is no genuine dispute of fact that the '172 Patent is in the same field as the '337 Patent, given that both relate to devices for mounting cameras.

Claim 1 of the '172 Patent recites:

An apparatus for engaging photographic equipment to a support, said apparatus comprising:

(a) a member defining a channel having a first side wall capable of lateral movement with respect to a second side wall;

(b) a lever capable of causing said lateral movement; and

(c) a substantially compressible member operably interconnected between said lever and said first side wall.[143]

And as the specification to the '172 Patent makes clear, the "compressible member" described in element (c) may extend through the "first side wall":

[T]he clamp **10** may be assembled by first inserting the stud **36** and the springs **28** into the body **12**. The adjustable arm **14** may then be pushed against the springs **28** until the adjustable arm **14** is engaged with the body **12** and the stud **36** protrudes through the adjustable arm **14**.[144]

The figure below shows this embodiment.

---

[141] *See supra* Section I.C.
[142] '172 Patent col. 1 ll. 5–8.
[143] *Id.* col. 6 ll. 32–40.
[144] *Id.* col. 5 l. 66 to col. 6 l. 4.

**Figure 6 of the '172 Patent**



There is no genuine dispute as to the scope or content of the '172 Patent. The device recited by the claims of the '172 Patent, at a bare minimum, consists of a base, an adjustable side wall, and a lever that operates the clamp. And in at least one embodiment described by the specification and figures, the lever is connected to a stud that passes through the adjustable side wall and is fixed to the base.

In addition to the '515 and '172 Patents, Defendant points to U.S. Patent Number 2,459,676 ("'676 Patent"), and U.S. Patent Number 6,135,435 ("'435 Patent").[145] The '676

---

[145] Def.'s Mot. 23–27.

Patent describes a "coupling or fixture" for the top of a tripod that will allow a camera to be rotated atop a tripod while secured to it.[146] Claim 1 of the '676 Patent provides for:

> A coupling adapted to connect a camera to a tripod, said coupling having a base plate, a pedestal having a hollow cylindrical base adapted to engage with the boss and its base, said pedestal having an upward extension having two parallel male sides, a bracket having two parallel female sides extending downwardly therefrom adapted to engage with the male sides of the pedestal, a hole through one of the downwardly extending sides of the bracket, a recess in the other side of the bracket, a hole through the upward extension of the pedestal, a stem having a male thread on the end thereof adapted to pass through one side of the bracket and through the extension of the pedestal and engage with the treaded recess in the other side of the bracket to hold the bracket on the pedestal and permit the bracket to rock on the pedestal . . . .[147]

Figure 2 below illustrates the clamping mechanism utilized.

---

[146] '676 Patent col. 1 ll. 6–16.
[147] *Id.* col. 3 ll. 28–50.

**Figure 2 of the '676 Patent**



The specification describing this figure reads:

> The pedestal and one side of the bracket are both perforated centrally to receive the stem **11**. The other side of the bracket is provided with a recess which is threaded with a female thread to engage with the male thread formed on the end of the stem. By this stem the pedestal and the bracket are held together so that the bracket can swing on the pedestal. This stem has a large knurled head **12** thereon. This stem on the end is threaded at **13** with the male thread. This male thread engages with the female thread formed on the sides **14** on the bracket.[148]

---

[148] '676 Patent col. 2 ll. 8–19; *see also id.* col. 3 ll. 28–50 (describing the same clamping mechanism in claim 1).

In other words, the '676 Patent discloses a "stem" operated by a knob that attaches the portion of the camera support mechanism that allows the camera to be swung vertically to the base that allows the camera to rotate horizontally.

Plaintiff suggests that because the '676 Patent was issued in 1948, a person of ordinary skill in the art would not necessarily apply it as prior art. But the only case cited by Plaintiff—*Application of Deters*[149]—cuts against it. There, the U.S. Court of Customs and Patent Appeals *rejected* an argument that the examiner wrongly held that a claim was obvious in light of a lapse of time between prior art: "[T]he allegation that the time lapse between [prior art] is evidence of unobviousness is unpersuasive in the absence of any showing that the passage of 26 years is significant."[150] While a longer period of time elapsed between the '676 Patent and the '337 Patent than the prior art at issue in *Deters*, Plaintiff has likewise made no persuasive showing that such a lapse of time should affect the analysis. Indeed, at least where similar clamping mechanisms for cameras have continued to be in use, as evidenced by the '172 and '738 Patents, no reasonable jury could fail to find that the '676 Patent is analogous prior art, given that it is from the same field—camera support mechanisms. Likewise, the court concludes that there can be no genuine dispute of fact as to the scope or content of the '676 Patent, and indeed, Plaintiff has made no such argument.

---

[149] 515 F.2d 1152 (Ct. of Customs and Patent Appeals 1975).
[150] *Id.* at 1155.

Finally, turning to the '435 Patent, it discloses a standard woodworker vise, that includes a "fixed jaw" and a "moveable outer jaw" operated by a "relatively long screw or spindle rotatably mounted on the moveable jaw that engages a female threaded nut or other device mounted on the fixed jaw."[151]

**Figure 1 of the '435 Patent**



Plaintiff makes no argument regarding whether the '435 Patent is prior art or about its scope or content.[152] It is clear that the '435 Patent comes from a different field than the '337 Patent—the '435 Patent has nothing to do with camera support systems. However, there also can be no genuine dispute that the '435 Patent would logically come to the inventor's attention in

---

[151] '435 Patent col. 1 ll. 3–33; *see also id.* col. 6 ll. 7–27 (claim 1).
[152] *Cf.* Pl.'s Resp. 20–22.

seeking to develop a camera clamp. Both devices utilize a fixed clamping jaw and a moveable clamping jaw, wherein movement of the latter is accomplished by either a screw or cam lever penetrating the moveable jaw and attached in the fixed jaw. Put another way, there can be no genuine dispute that the '435 Patent and claim 1 of the '337 Patent have the same purpose—to execute a clamp. Therefore, there is no genuine dispute that the '435 Patent is analogous prior art. Likewise, there is no genuine dispute as to the scope and content of the '435 Patent.

### ii.     Differences Between Prior Art and the Claimed Invention

As noted above, claim 1 of the '337 Patent was initially held to be invalid as obvious.[153] The examiner concluded that the '172 Patent described the clamping device recited in claim 1, while the '515 Patent described the support device, thus rendering the original claim 1 obvious.[154] The claim was then permitted after the patentee added element (e).[155]

Claim 1 describes three members in element (e): the first member, the first clamp member, and the second clamp member.[156] The second clamp member is secured to the first clamp member and can be moved relative to the first clamp member through the movement of the first member in order to clamp an object between the first and second clamp members.[157] This can be seen in the cross section shown by Figure 2:

---

[153] JA 187–89.
[154] *Id.* at 188–89.
[155] *Id.* at 171, 177.
[156] *See* '337 Patent col. 4 ll. 2–32.
[157] *Id.*

**Figure 2 of the '337 Patent**



The specification makes clear that element 16 is the first member (described in the specification as the "clamp screw"), element 12 is the first clamp member (described in the specification as the "clamp body"), and element 14 is the second clamp member (described in the specification as the "clamp jaw").[158] Per element (e) of claim 1, Figure 3 shows the clamp screw engaged to the clamp body while passing through the clamp jaw. By tightening the clamp screw, the space between the clamp body and the clamp jaw would be narrowed.

Defendant argues that element (e) describes a "screw-type" clamping mechanism and that such mechanisms were well known by the prior art.[159] Plaintiff argues "reference to a 'screw-type clamping mechanism' is nowhere in claim 1 of the '337 Patent," and that it would be improper to limit the claims to the specification.[160] While it is true that claim 1 of the '337 Patent is not limited to a "screw-type clamping mechanism,"[161] that is at least one embodiment of the invention described, as the specification and figures clearly illustrate. And while it is generally

---

[158] *See id.* col. 2 ll. 29–46 (describing Figure 1).
[159] Def.'s Mot. 23–27.
[160] Pl.'s Resp. 22.
[161] *See* '337 Patent col. 4 ll. 13–32 (describing the "first member" without reference to whether it is operated by a knob or lever).

48

improper to import limitations from the specification into the claims,[162] in this case, it is immaterial to the question of obviousness whether element (e) encompasses a screw-type clamping mechanism, a cam lever, or something else. The question is whether, in light of the prior art, it would be obvious for the first member to pass through the second clamping member in order to attach to the first clamping member.

For starters, element (e) of the '337 Patent is plainly shown by the '172 Patent. The specification and figures to the '172 Patent show an equivalent apparatus to the '337 Patent, with the only real difference being that the preferred embodiment shown by the '172 Patent is operated by a cam lever, while the preferred embodiment of the '337 Patent is operated by a knob. Otherwise, the clamping mechanisms between the two patents are identical.

Likewise, the '676 Patent shows a clamp operated by a screw that adjusts the width between the two sides of the clamp. However, the similarities between claim 1 of the '337 Patent and the '676 Patent largely end there, given that the clamp otherwise functions differently. Namely, the screw described by the '676 Patent does not operate the camera clamp, but rather, clamps one portion of the apparatus to another. In addition, it penetrates the base of the apparatus, thereby securing it not only through a clamp, as opposed to the '337 Patent.

Finally, the '435 Patent differs from claim 1 of the '337 Patent in terms of purpose, but its function is essentially identical. As discussed above, both clamps operate by adjusting the moveable clamping jaw through tightening of a long screw either via rotation or cam lever.

---

[162] *E.g.*, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323–24 (Fed. Cir. 2005).

### iii.  Conclusion on Obviousness of Claim 1 of the '337 Patent

The court finds that there is no genuine dispute on the scope and content of prior art, or the differences between prior art and the claimed invention. The only purported difference between prior art and claim 1 of the '337 Patent was element (e). And no reasonable jury could conclude other than that the '172, '676, and '435 Patents each depict features identical to element (e)—a stud or clamping screw extending through the adjustable clamping arm into the body of the clamp. As the examiner found, it is obvious to combine the teachings of the '515 and '172 Patents. And given that the '172 Patent itself discloses the only purportedly novel element, the court reaches the same conclusion.[163] It is merely a predictable variation to combine the base described in the '515 Patent to the clamp described by the '172 Patent, including the stud described in element (e). But beyond that, even if the '172 Patent did not disclose an identical feature, the '676 and '435 Patents provide ample prior art from which the inventor could draw. The '435 Patent in particular shows a device that is functionally identical to that described by element (e) of claim 1 of the '337 Patent. Given how simple and widespread this technology is, and taking account of the inferences and creative steps a person of ordinary skill would employ, the court finds that it is obvious to execute a clamp in this manner. Accordingly, the court holds that claim 1 of the '337 Patent is, as a whole, invalid as obvious.

---

[163] It is also worth noting that the claim 29 of the '172 Patent was initially found by the examiner to be anticipated by the '738 Patent, which itself discloses an identical clamp apparatus as claim 1 of the '337 Patent. *See supra* Section I.C.2 (describing the scope and content of the '738 Patent).

### 2.    Claim 25

Claim 25 of the '337 Patent recites:

An integrated panoramic device comprising:

(a) a base having a lower surface suitable for supporting said base;

(b) a first clamp member secured for rotation to said base and comprising a first clamp surface rotatable about a single axis substantially normal to said lower surface, said panoramic device being free from and incapable of said first clamp surface being rotatable about an axis other than said single axis substantially normal to said lower surface;

(c) a second clamp member including a second clamp surface slidably secured to said first clamp member and movable as a result of movement of a first member to approach said second clamp surface relative to said first clamp surface to clamp an article therebetween and moveable as a result of movement of said first member to separate said second clamp surface relative to said first clamp surface to release an article clamped between said first clamp surface and said second clamp surface;

(d) a second member as a result of movement to selectively impede relative rotation to said first clamp member and said base, said first clamp member and said second clamp member not releasable from said base by movement of said second member, and said first clamp member rotatable through 360 degrees with respect to said base;

(e) wherein said second member is engaged with said base and wherein said second member includes a knob attached thereto.[164]

The examiner rejected claim 1 as originally filed but permitted claim 12; the patentee incorporated claim 12 as element (e) into new claim 25.[165] In other words, claim 25 is identical to claim 1 in every respect, except for element (e).

---

[164] '337 Patent col. 5 ll. 28–58.
[165] JA 174, 177, 188–89, 192.

Elements 30 and 42 in the figures below illustrate element (e) of claim 25.

**Figure 1 of the '337 Patent**



**Figure 3 of the '337 Patent**



The specification describes the purpose and function of the "second member."

52

> A panning base **20** includes a recess therein into which supports a cinching ring **26**. . . . A cinching knob **30** is attached to a stud **42** is engaged with a threaded gap **45** in the cinching ring **26.** . . .
>
> [T]he cinching ring **26** surrounds a lower portion **54** of the clamp body **14**. When the user desires to permit free rotational motion of the clamp body **12** with respect to the panning base **20**, the cinching knob **30** is released, which releases the cinching ring **26**. When the user desires to inhibit free rotational motion of the clamp body **12** with respect to the panning base **20**, the cinching knob **30** is tightened, which decreases the diameter of the cinching ring **26**. . . . This results in selective rotational movement of the panning clamp **10**.[166]

In other words, the "second member" described by elements (d) and (e) in claim 25 allows a user to inhibit the rotation of the camera relative to the tripod. Notably, the "cinching ring" described in the specification is not itself claimed as part of the "second member."

Defendant argues that element (e) is invalid as obvious in light of the '676 Patent.[167]

Plaintiff does not argue that the limitation of element (e) was not present in the '676 Patent.[168]

### i.      Scope and Content of Prior Art

As discussed above, there is no genuine dispute that the '172, '515, and '676 Patents are analogous prior art, given that all are from the field of camera support devices.[169] And, as above, there is no genuine dispute as to the scope and content of the '172 and '515 Patents.

---

[166] '337 Patent col. 2 ll. 55–61, col. 2 l. 66 to col. 3 l. 13.
[167] Def.'s Mot. 27–29.
[168] *Cf.* Pl.'s Resp. 23.
[169] *See supra* Section I.E.1.i.

Next, with respect to the scope and content of the '676 Patent, that patent refers to a "set screw in the cylindrical bottom of the pedestal that engages with the cylindrical extension of the base[.]"[170] This is shown by elements 8 and 9 in the figure below.

**Figure 2 of the '676 Patent**



The specification provides:

> In the bottom of the pedestal is threaded a screw **8** having a horizontal axis, which screw has a knurled head **9** thereon. This screw has a reduced end **8a**, which engages with the annular groove **6a** and holds the pedestal firmly engaged with the base, permitting it, however to turn thereon. By turning the screw, the pedestal can be firmly clamped to the base. . . .

---

[170] '676 Patent col. 4 ll. 7–10.

By [handle **22**], the bracket can be tilted on the axis through a wide angle on the stem **11** so that the camera can be pointed up or down and can be turned at any angle around the points of the compass on the cylindrical top or boss **4**. In this way a universal adjustment of the camera is secured.

When the desired position of the camera is secured, the camera can be fastened securely in place by turning the knurled head **9** which locks it at the bottom and by turning the knurled head **12**, which fixes the angle on the horizontal axis and by turning the handle **22**, which clamps the top of the coupling to the bracket.[171]

There is no genuine dispute as to the scope or content of the '676 Patent, and Plaintiff does not contend otherwise.

### ii.        Differences Between Prior Art and the Claimed Invention

As discussed above, the examiner initially rejected elements (a) through (d) of claim 25 as obvious in light of the '172 and '515 Patents.[172] According to Defendant, the '676 Patent describes a feature identical to element (e).[173]

The '676 Patent provides for a method of locking the camera in place through two sets of knobs. The knob at the base of the device locks the device from rotating horizontally, while the knob in the middle of the device locks the camera's angle in place.[174] There is no material difference between the knob at the base and the knob described by elements (d) and (e) of claim 25 of the '337 Patent. They have the same purpose, and both function through the tightening of a knob.

---

[171] '676 Patent col. 1 ll. 41–48, col. 2 l. 48 to col. 3 l. 6.
[172] *See supra* note 165 and accompanying text.
[173] *See* Def.'s Mot. 27.
[174] *See* '676 Patent col. 2 l. 48 to col. 3 l. 6.

Accordingly, there is no genuine dispute on the difference between the '676 Patent, and Plaintiff does not raise one.

### iii.    Conclusion on Obviousness of Claim 25 of the '337 Patent

The court has found that there is no genuine dispute of material fact on the scope and content of prior art, or the differences between prior art and claim 25. The '676 Patent has an apparatus identical to the second member described in elements (d) and (e) of claim 25. The examiner held that it was obvious in light of the '515 Patent to include a second member to selectively impede rotation of the clamp relative to the base.[175] It is merely a predictable variation on the '515 Patent to inhibit rotation of the camera through operation of a knob, especially since the '676 Patent discloses an identical knob with an identical purpose. Thus, the limitations of element (e) are obvious in light of the combination of the '515 and '676 Patents.

### 3.    Dependent Claims

As with the dependent claims to claim 1 of the '718 Patent, Defendant argues only that the court should hold that dependent claims 7, 11, 18, 26, 30, 33, 35, and 42 are invalid as obvious because the examiner initially rejected nearly all of those claims for obviousness.[176] Plaintiff rests its argument on the independent claims.[177] Accordingly, because the independent

---

[175] JA 188–89.

[176] Def.'s Mot. 29–31.

[177] Pl.'s Resp. 23 ("Defendant fails to show that either independent claim should be invalidated as obvious, and therefore all dependent claims, which necessarily include the novel and nonobvious elements of the independent claims, are novel and nonobvious as well.").

claims are invalid as obvious, the dependent claims must fall as well, given the lack of argument to the contrary.[178]

To summarize: the court finds by clear and convincing evidence that each of the claims asserted in this case is invalid as obvious. There is no genuine dispute of material fact on any issue necessary to make this determination. And after considering the scope and content of prior art, the differences between prior art and the claims at issue, and the level of ordinary skill in the art, the court finds that obviousness is apparent for each of the claims at issue. Accordingly, the court need not reach the question of infringement raised by both parties.

## ORDER

The court GRANTS IN PART Defendant's motion for summary judgment to the extent that it relates to invalidity and DENIES IN PART as MOOT Defendant's motion to the extent that it relates to infringement.[179] The court DENIES as MOOT Plaintiff's motion for summary judgment regarding infringement,[180] and Plaintiff's motion for leave to file a sur-reply.[181]

Signed May 31, 2024.

BY THE COURT

David Barlow
United States District Judge

---

[178] *See* sources cited *supra* note 133 and accompanying text.
[179] ECF No. 146
[180] ECF No. 148.
[181] ECF No. 153.